**David Alan DELANEY**

v.

**Danny CORLEY, Jr.**

**Civ. A. No. 94–1550.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

Aug. 1, 1995.

Stephen D. Wheelis, Provosty, Sadler & deLaunay, Thomas C. McBride, McBride & Assoc., Alexandria, LA, for David Alan Delaney.

Charles Gregory Gravel, Gravel Shannon & Cespiva, Alexandria, LA, for Danny Corley, Jr.

### DECISION ON APPEAL

LITTLE, District Judge.

The bankruptcy court found appellant's debt, created by a civil judgment, to be non-dischargeable under 11 U.S.C. § 523(a)(6) ("willful and deliberate injury by the debtor to another entity or the property of another entity"). For the reasons that follow, we reverse and remand.

A brief recitation of the uncontroverted facts would be in order. David Alan Delaney and Danny Corley, Jr. lived in the Tioga, Louisiana area in September of 1989. Each had graduated from high school, had jobs, but continued to live with their respective parents. In the fall of 1989, each was a teenage adult.

Corley and Delaney were not pals or buddies, but they were acquaintances. From time to time they would see each other at various social events. The girls they dated were friends. For reasons not worthy of repeating, Corley felt that Delaney or his girlfriend had created some rift between the men, so much so that a settling of the differences seemed in order.

In the early hours of 24 September 1989, Corley telephoned Delaney. The sum and substance of the call was an invitation to Delaney to meet Corley at a remote area. There the problems between the two would be adjusted. Delaney demurred. As an alternative, Delaney suggested that he was going to remain at his home, and if Corley wanted to see him, he could do so by coming to the Delaney home. Corley advised that his attendance would be immediate.

Corley was driven to Delaney's home by a friend. Although it took only a short time to travel from Corley's house to Delaney's, Delaney had time to grab and load a sawed-off shot gun. As soon as the car rolled up the driveway, the antiburglar lights were activated. Delaney, holding the gun by the stock and trigger, was on the passenger side of the vehicle when it stopped in the driveway. Delaney said, "Get out of the damn car, Danny." While making the command, Delaney tapped the windshield twice with the gun barrel, and the gun discharged. Corley was badly and permanently injured.

Corley filed a civil suit alleging negligence in the handling of the weapon by Delaney. The jury found for Corley and cast Delaney in a money judgment. After the judgment was modified by the Third Circuit Court of Appeal for the State of Louisiana, Delaney being cast for 80% of the liability and Corley being deemed 20% responsible for his own injury, Delaney filed for bankruptcy. He sought to discharge his civil exposure of over $1,000,000. The bankruptcy court found the tort to be intentional and disallowed the discharge.

This court has capacity to hear appeals from decisions of a bankruptcy court. See 28 U.S.C. § 158. Our review of a bankruptcy court's decision is governed by the same standards employed by a review by the Fifth Circuit. A bankruptcy court's conclusions of law are subject to plenary review on appeal and the findings of fact are adopted, unless clearly erroneous. "A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.... When a finding of fact is premised on an improper legal standard, or a proper one improperly applied, that finding loses the insulation of the clearly erroneous rule." In re Niland, 825 F.2d 801, 806 (5th Cir.1987); see also Roy v. Gravel, 143 B.R. 825 (W.D.La.1992), aff'd, 983 F.2d 1062 (5th Cir.1993).

The bankruptcy court took no testimony but made its decision predicated upon the submission of a number of exhibits. The

exhibits included testimony from the civil trial, a deposition taken in preparation for the civil trial, the jury instructions, the jury verdict, the judgment of the trial court, and the decisions of the appellate panel amending the judgment.

A debt is not dischargeable in bankruptcy if it arises due to the "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Fifth Circuit has given that section meaning by quoting with approval from Collier on Bankruptcy. "To fall within the exception of § 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill-will. The word 'willful' means 'deliberate or intentional,' a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury." *Matter of Quezada*, 718 F.2d 121, 123 (5th Cir.1983), quoting 3 Collier on Bankruptcy § 523.16 at 523–118 (15th ed. 1983).

The opinion of the bankruptcy judge paints the malefactor's acts as willful and malicious with these words: "It is beyond peradventure that loading a twelve gauge, double barreled, sawed-off shotgun and pointing it toward the face of another unarmed person or against a windshield just beyond the face is wrongful and without just cause. The facts also support a finding that the acts were deliberate, intentional and led to the plaintiff's injuries." We have no quarrel with the conclusions that the loading and pointing were intentional acts. But the factual findings do not address or evaluate the damage causing activity, viz: the discharge of the gun upon Delaney's tapping on the windshield. But for that act, no damage could have occurred. The shotgun must discharge to produce the injury suffered by Mr. Corley.

Our reading of the record leads to a finding that the weapon discharge was inadvertent, unintended, and totally accidental. We are driven to that conclusion for many reasons, including the trial testimony of David Delaney at page 322; the trial testimony of William Meyers at page 51; and the deposition testimony of the victim himself at pages 34, 42, and 60. We are particularly interested in the victim's assertion that Mr. Delaney "tapped twice to get my attention, I guess to get my attention." page 60.

Thus, we are left with the inescapable conclusion that there is no finding of fact to support the decision that the damage causing act of Mr. Delaney was willful and malicious. Hence, the decision of the bankruptcy court is reversed. This matter is returned to the bankruptcy court for further action not inconsistent with this opinion.